IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

EMMY BACKUSY,                          §
TDCJ No. 2166343,                      §
                                       §
            Petitioner,                §
                                       §
V.                                     §          No. 3:19-cv-2913-N-BN
                                       §
DIRECTOR, TDCJ-CID,                    §
                                       §
            Respondent.                §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Petitioner Emmy Backusy filed a *pro se* application for habeas relief under 28 U.S.C. § 2254. Dkt. No. 3. His habeas action was referred to the undersigned United States Magistrate Judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from the presiding United States district judge.

Backusy collaterally attacks his Dallas County conviction for the aggravated sexual assault of a child, for which he was sentenced to a seventy-six-year prison sentence. *See State v. Backusy*, No. F-1654232-N (195th Jud. Dist. Ct., Dallas Cnty., Tex. Nov. 2, 2017). Backusy's conviction and sentence were affirmed on direct appeal. *Backusy v. State*, No. 05-17-01288-CR, 2018 WL 5730166 (Tex.App. – Dallas Nov. 2, 2018). The Texas Court of Criminal Appeals ("TCCA") rejected Backusy's PDR and rejected his motion for rehearing. *Backusy v. State*, No. PD-1327-18 (Tex. Crim. App. Jan. 30, 2019).

And the TCCA denied his state habeas petition without written order. *See Ex parte Backusy*, WR-89,987-01 (Tex. Crim. App. July 17, 2019).

Backusy then filed a *pro se* 28 U.S.C. § 2254 habeas petition [Dkt. No. 3] on December 3, 2019, the date on which he certifies that he placed the petition in the prison mailing system. *See Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998) (generally, for purposes of determining the applicability of the AEDPA, a federal petition is filed on the date it is placed in the prison mail system). The State filed a response, *see* Dkt. No. 16, and Backusy filed a reply, *see* Dkt. No. 19.

The undersigned now enters these findings of fact, conclusions of law, and recommendation that the Court should deny federal habeas relief.

## Legal Standards

"Federal habeas features an intricate procedural blend of statutory and caselaw authority." *Adekeye v. Davis*, 938 F.3d 678, 682 (5th Cir. 2019). In the district court, this process begins – and often ends – with the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), under which "state prisoners face strict procedural requirements and a high standard of review." *Adekeye*, 938 F.3d at 682 (citation omitted).

Under the AEDPA, where a state court has already rejected a claim on the merits, a federal court may grant habeas relief on that claim only if the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as

2

determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see Adekeye*, 938 F.3d at 682 ("Once state remedies are exhausted, AEDPA limits federal relief to cases where the state court's decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States' or was 'based on an unreasonable determination of the facts in light of the evidence presented.'" (citation omitted)); *see also Allen v. Vannoy*, 659 F. App'x 792, 798-99 (5th Cir. 2016) (per curiam) (describing Section 2254(d) as "impos[ing] two significant restrictions on federal review of a habeas claim ... 'adjudicated on the merits in state court proceedings'").

And "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *see also Sanchez v. Davis*, 936 F.3d 300, 305 (5th Cir. 2019) ("[T]his is habeas, not a direct appeal, so our focus is narrowed. We ask not whether the state court denial of relief was incorrect, but whether it was unreasonable – whether its decision was 'so lacking in justification' as to remove 'any possibility for fairminded disagreement.'" (citation omitted)).

A state court decision is "contrary" to clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme

3

Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir. 2004); *see also Lopez v. Smith*, 574 U.S. 1, 2 (2014) (per curiam) ("We have emphasized, time and time again, that the [AEDPA] prohibits the federal courts of appeals from relying on their own precedent to conclude that a particular constitutional principle is 'clearly established.'" (citation omitted)).

"A state court unreasonably applies clearly established Supreme Court precedent when it improperly identifies the governing legal principle, unreasonably extends (or refuses to extend) a legal principle to a new context, or when it gets the principle right but 'applies it unreasonably to the facts of a particular prisoner's case.'" *Will v. Lumpkin*, 978 F.3d 933, 940 (5th Cir. 2020) (quoting *Williams v. Taylor*, 529 U.S. 362, 407-08 (2000); citation omitted). "But the Supreme Court has only clearly established precedent if it has 'broken sufficient legal ground to establish an asked-for constitutional principle.'" *Id.* (quoting *Taylor*, 569 U.S. at 380-82; citations omitted).

"For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law.... A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citations and internal quotation marks omitted). "Under § 2254(d), a habeas court must determine what arguments or theories supported or ... could have supported, the state

court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 102 (internal quotation marks omitted); *see also Evans v. Davis*, 875 F.3d 210, 216 (5th Cir. 2017) (recognizing that Section 2254(d) tasks courts "with considering not only the arguments and theories the state habeas court actually relied upon to reach its ultimate decision but also all the arguments and theories it could have relied upon" (citation omitted)).

The Supreme Court has further explained that "[e]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Richter*, 562 U.S. at 101 (internal quotation marks omitted). And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. The Supreme Court has explained that, "[i]f this standard is difficult to meet, that is because it was meant to be," where, "[a]s amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings," but "[i]t preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents," and "[i]t goes no further." *Id.* Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim

5

being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103; *accord Burt v. Titlow*, 571 U.S. 12, 20 (2013) ("If this standard is difficult to meet – and it is – that is because it was meant to be. We will not lightly conclude that a State's criminal justice system has experienced the extreme malfunction for which federal habeas relief is the remedy." (internal quotation marks, brackets, and citations omitted)).

As to Section 2254(d)(2)'s requirement that a petitioner show that the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," the Supreme Court has explained that "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance" and that federal habeas relief is precluded even where the state court's factual determination is debatable. *Wood v. Allen*, 558 U.S. 290, 301, 303 (2010). Under this standard, "it is not enough to show that a state court's decision was incorrect or erroneous. Rather, a petitioner must show that the decision was objectively unreasonable, a substantially higher threshold requiring the petitioner to show that a reasonable factfinder must conclude that the state court's determination of the facts was unreasonable." *Batchelor v. Cain*, 682 F.3d 400, 405 (5th Cir. 2012) (brackets and internal quotation marks omitted).

6

The Court must presume that a state court's factual determinations are correct and can find those factual findings unreasonable only where the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001).

This presumption applies not only to explicit findings of fact but also "to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001); *see also Ford v. Davis*, 910 F.3d 232, 235 (5th Cir. 2018) (Section 2254(e)(1) "'deference extends not only to express findings of fact, but to the implicit findings of the state court.' As long as there is 'some indication of the legal basis for the state court's denial of relief,' the district court may infer the state court's factual findings even if they were not expressly made." (footnotes omitted)).

And, even if the state court errs in its factual findings, mere error is not enough – the state court's decision must be "*based* on an unreasonable factual determination. … In other words, even if the [state court] had gotten [the disputed] factual determination right, its conclusion wouldn't have changed." *Will*, 978 F.3d at 942.

Further, "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning." *Richter*,

562 U.S. at 98; *see also Pondexter v. Dretke*, 346 F.3d 142, 148 (5th Cir. 2003)

("a federal habeas court is authorized by Section 2254(d) to review only a state

court's 'decision,' and not the written opinion explaining that decision" (quoting

*Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc) (per curiam)));

*Evans*, 875 F.3d at 216 n.4 (even where "[t]he state habeas court's analysis [is]

far from thorough," a federal court "may not review [that] decision de novo

simply because [it finds the state court's] written opinion 'unsatisfactory'"

(quoting *Neal*, 286 F.3d at 246)).

Section 2254 thus creates a "highly deferential standard for evaluating

state court rulings, which demands that state-court decisions be given the

benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). To overcome

this standard, a petitioner must show that "there was no reasonable basis for

the state court to deny relief." *Richter*, 562 U.S. at 98. That is, a petitioner

must, in sum, "show, based on the state-court record alone, that any argument

or theory the state habeas court could have relied on to deny [him] relief would

have either been contrary to or an unreasonable application of clearly

established federal law as determined by the Supreme Court." *Evans*, 875 F.3d

at 217.

## Analysis

### A.    Due Process

Initially, Backusy appear to claim that his due process rights were

violated because the prosecution suppressed evidence and used perjured

testimony. The State argues in response that Backusy did not exhaust this ground for relief in state court and that, because he would be barred from doing so now, it is barred under the federal procedural default doctrine. The undersigned agrees.

Backusy's PDR and state habeas brief reference the use of perjured testimony and the suppression of evidence. *See* Dkt. 18-17 at 9; Dkt. 18-23 at 19. But the facts supporting those claims before the TCCA are unclear and appear to differ from those that Backusy presents in this federal habeas application. Here, Backusy supports his suppression-of-evidence and perjured-testimony claims with the following factual allegations:

> The child had medical exams; no physical evidence presented; the nurse and doctor witnessed without examining the child; the child was intimidated not to tell; Mr. Diomeded Ms. Chisseya [sic] are undisclosed witnesses; no police report ever called; the state used unauthenticated report as evidence.

Dkt. 3 at 6. And in his reply brief, Backusy adds a bit more color to the use-of-perjured-testimony claim, apparently arguing that a nurse practitioner, Ms. Carmen White, falsely testified that she examined the victim and that the victim told her that her step father (Backusy) had touched her vagina.

As noted, though, these assertions were not the basis for Backusy's use-of-perjured-testimony and suppression-of-evidence arguments in state court. To satisfy the exhaustion requirement, a claim must be presented to the highest court of the state – here the TCCA – for review. *Deters v. Collins*, 985 F.2d 789, 795 (5th Cir. 1993); *Richardson v. Procunier*, 762 F.2d 429, 431

9

(1985). And to have been properly exhausted, "the state court system must have been presented with the same facts and legal theory upon which the petitioner bases his current assertions." *Ruiz v. Quarterman*, 460 F.3d 638, 643 (5th Cir. 2006) (citing *Picard v. Connor*, 404 U.S. 270, 275-77 (1971)). Here, to the extent Backusy raised the issues of suppression of the evidence and the use of perjured testimony in state court, they were not in relation to the same facts upon which he attempts to make such claims here. Thus, Backusy failed to exhaust his first ground for relief.

Unexhausted claims should be found procedurally barred if "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991). Texas law precludes successive habeas claims except in narrow circumstances. *See* TEX. CODE CRIM. PROC. ANN. art. 11.07, § 4. This is a codification of the judicially created Texas abuse-of-the-writ doctrine. *See Barrientes v. Johnson*, 221 F.3d 741, 759 n.10 (5th Cir. 2000). Under this state law, a habeas petitioner is procedurally barred from returning to the Texas courts to exhaust his claims unless the petitioner presents a factual or legal basis for a claim that was previously unavailable or shows that, but for a violation of the United States Constitution, no rational juror would have found for the State. *See id.* at 758 n.9. Therefore, unexhausted claims that could not make the showing required by this state law would be considered procedurally barred from review on the merits in this

10

Court unless an exception is shown. *See Beazley v. Johnson*, 242 F.3d 248, 264 (5th Cir. 2001).

An exception to this bar allows federal habeas review if a petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. But these claims are procedurally barred because Backusy has not made that showing here.

Nevertheless, even if Backusy did properly exhaust his claims related to perjured testimony and suppression of evidence in state court, he has not shown entitlement to relief on the merits. For Backusy to show that his right to due process of law has been violated by the use of perjured testimony, he must show (1) the actual falsity of a witness's testimony, (2) that the testimony was material, and (3) that the prosecution knew that the witness's testimony was false. *See, e.g.*, *Giglio v. United States*, 405 U.S. 150, 153-54 (1972); *Fuller v. Johnson*, 114 F.3d 491, 496 (5th Cir. 1997); *Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir. 1990).

Here, Backusy fails to show that the state used perjured testimony from Ms. Carmen White. In his reply brief, he claims that the report documenting the examination does not list Ms. White as the examining nurse, instead listing "Lucum Provider." Dkt. 19 at 26. Backusy also notes that the report was also signed by one Cynthia Olade – not Ms. White – weeks after the actual

examination. *Id.* But even assuming that Ms. White's name was not on an examination report, this does not demonstrate that her testimony was false. And even assuming it did – for the sake of argument – Backusy points to nothing showing that the prosecution knew of its falsity.

To the extent that the state court was presented with this ground for relief and rejected it, the undersigned cannot say that such rejection (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Backusy's due process ground for relief stemming from the use of supposed perjured testimony is procedurally defaulted and without substantive merit.

As for the merits of the suppression of evidence claim, it is unclear what evidence that Backusy contends was suppressed. Under *Brady v. Maryland*, 373 U.S. 83 (1963), the prosecution has a duty to disclose to the defense exculpatory evidence that is material either to guilt or to punishment. *Brady*, 373 U.S. at 87. To establish a *Brady* violation, a defendant must show that (1) the prosecution suppressed evidence; (2) the evidence was favorable, such as exculpatory or impeachment evidence; and (3) the evidence was material. *In re Coleman*, 344 F. App'x 913, 915-16 (5th Cir. 2009) (citations omitted). Materiality "is generally the most difficult element to prove in a *Brady* claim,"

*Coleman v. Cain*, Civ. A. No. 07-3655, 2014 WL 348541, at \*10 (E.D. La. Jan. 31, 2014) (citing *Cobb v. Thaler*, 682 F.3d 364, 377 (5th Cir. 2012)), and "is met when 'the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict,'" *Rocha v. Thaler*, 619 F.3d 387, 397 (5th Cir. 2010) (quoting *Banks v. Dretke*, 540 U.S. 668, 698 (2004) (in turn quoting *Kyles v. Whitley*, 514 U.S. 419, 435 (1995)).

Backusy fails to meet any of the elements of a *Brady* claim here, as he points to no evidence that the prosecution suppressed – much less that any such evidence was material. To the extent that the state court was presented with this ground for relief and rejected it, the undersigned cannot say that such rejection (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Backusy's due process ground for relief stemming from the alleged suppression of evidence is likewise procedurally defaulted and without substantive merit.

### B.    Ineffective Assistance of Counsel ("IAC")

In his federal habeas application, Backusy asserts that his Sixth Amendment right to effective assistance of trial counsel was violated by his counsel's: (1) lack of investigation prior to trial; (2) reliance on the State's

"reference"; (3) failure to object to malicious court instructions to the jury, easing the burden of proof beyond a reasonable doubt; and (4) failure to hire and present expert witnesses.

Backusy raised various IAC theories in state court, but he did not assert the second theory raised in his Section 2254 application. *See* Dkt. No. 18-17; 18-20 at 10-11. The factual and legal basis for the assertion that Backusy's counsel was ineffective for relying on the State's "reference" was therefore not "fairly presented to the" TCCA, as the highest available state court, for review, which means that Backusy has failed to properly exhaust state court remedies as to this claim. And, because the Texas abuse-of-the-writ doctrine would preclude Backusy from raising this claim in a subsequent state habeas application, it is procedurally barred unless an exception is shown. But Backusy does not demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law. Nor has he demonstrated that failure to consider the claim will result in a fundamental miscarriage of justice. Thus, Backusy's IAC claim premised on the assertion that his counsel relied on the State's "reference" is procedurally barred.

Turning to the remaining IAC grounds, the Court reviews the merits of properly exhausted IAC claims, whether directed at trial or appellate counsel, under the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984), under which a petitioner "'must show that counsel's performance'" – "'strongly presume[d to be] good enough'" – "'was [1] objectively unreasonable

and [2] prejudiced him.'" *Coleman v. Vannoy*, 963 F.3d 429, 432 (5th Cir. 2020) (quoting *Howard v. Davis*, 959 F.3d 168, 171 (5th Cir. 2020)).

To count as objectively unreasonable, counsel's error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687; *see also Buck v. Davis*, 137 S. Ct. 759, 775 (2017) (reaffirming that "[i]t is only when the lawyer's errors were 'so serious that counsel was not functioning as the "counsel" guaranteed ... by the Sixth Amendment' that *Strickland*'s first prong is satisfied" (citation omitted)). "And to establish prejudice, a defendant must show 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Andrus v. Texas*, 140 S. Ct. 1875, 1881 (2020) (per curiam) (quoting *Strickland*, 466 U.S. at 694).

"A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003); *see also Feldman v. Thaler*, 695 F.3d 372, 378 (5th Cir. 2012) ("[B]ecause of the risk that hindsight bias will cloud a court's review of counsel's trial strategy, 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered

15

sound trial strategy.'" (quoting *Strickland*, 466 U.S. at 689)).

And, "[j]ust as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Richter*, 562 U.S. at 110. "The Supreme Court has admonished courts reviewing a state court's denial of habeas relief under AEDPA that they are required not simply to give [the] attorney's the benefit of the doubt, ... but to affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as they did." *Clark v. Thaler*, 673 F.3d 410, 421 (5th Cir. 2012) (internal quotation marks omitted).

Therefore, on habeas review under AEDPA, "if there is any 'reasonable argument that counsel satisfied *Strickland*'s deferential standard,' the state court's denial must be upheld." *Rhoades v. Davis*, 852 F.3d 422, 432 (5th Cir. 2017) (quoting *Richter*, 562 U.S. at 105); *see also Sanchez*, 936 F.3d at 305 ("As the State rightly puts it, we defer 'both to trial counsel's reasoned performance and then again to the state habeas court's assessment of that performance.'" (quoting *Rhoades*, 852 F.3d at 434)).

To demonstrate prejudice, a habeas petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Thus, "the question is not whether a court can be certain counsel's

performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Richter*, 562 U.S. at 111. "Instead, *Strickland* asks whether it is 'reasonably likely' the result would have been different," which "does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.'" *Id.* at 111-12 (quoting *Strickland*, 466 U.S. at 693, 696, 697). "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

IAC claims are considered mixed questions of law and fact and are therefore analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010); *Adekeye*, 938 F.3d at 682.

Where the state court has adjudicated claims of ineffective assistance on the merits, this Court must review a habeas petitioner's claims under the "doubly deferential" standards of both *Strickland* and Section 2254(d). *Cullen v. Pinholster*, 563 U.S. 170, 190, 202 (2011); *compare Rhoades*, 852 F.3d at 434 ("Our federal habeas review of a state court's denial of an ineffective-assistance-of-counsel claim is 'doubly deferential' because we take a highly deferential look at counsel's performance through the deferential lens of § 2254(d)." (citation omitted)), *with Johnson v. Sec'y, DOC*, 643 F.3d 907, 910-11 (11th Cir. 2011) ("Double deference is doubly difficult for a petitioner to

17

overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.").

In such cases, the "pivotal question" for this Court is not "whether defense counsel's performance fell below *Strickland*'s standard"; it is "whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. at 101; *see also id.* at 105 ("Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." (internal quotation marks and citations omitted)). In other words, AEDPA does not permit a *de novo* review of state counsel's conduct in these claims under *Strickland. See id.* at 101-02. Instead, on federal habeas review of a *Strickland* claim fully adjudicated in state court, the state court's determination is granted "a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.* at 101.[1]

---

[1] *See also Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (per curiam) (explaining that federal habeas review of ineffective-assistance-of-counsel claims is "doubly deferential" "because counsel is 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment'"; therefore, "federal courts are to afford 'both the state court and the defense attorney the benefit of the doubt'" (quoting *Burt*, 571 U.S. at 22, 15)); *Adekeye*, 938 F.3d at 683-84 ("The Supreme Court standard on prejudice is sharply defined: 'It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.' [A petitioner] must show it was 'reasonably likely' the jury would have reached a different result, not merely that it could have

### (i)    Failure to Investigate

Regarding Backusy's first IAC claim, that his counsel failed to investigate, under *Strickland*, counsel's duty is "to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." 466 U.S. at 691. And the Fifth Circuit has held that, "[i]n assessing unreasonableness a heavy measure of deference must be applied to counsel's judgments. A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989) (citations omitted).

Backusy fails to make that showing here; instead, his allegations are conclusory and insufficient to sustain relief. *See generally* Dkt. 3 at 6, 13; *see also Schlang v. Heard*, 691 F.2d 796, 799 (5th Cir. 1982) (noting that "[m]ere conclusory statements do not raise a constitutional issue in a habeas case"). Therefore, the state court's denial of this IAC ground for relief was not

_____

reached a different result. The Court reaffirmed this point in *Richter*: 'The likelihood of a different result must be substantial, not just conceivable.' Now layer on top of that the habeas lens of reasonableness. [Where] the state court has already adjudicated [a petitioner's] ineffective-assistance claim on the merits, he must show that the court's no-prejudice decision is 'not only incorrect but "objectively unreasonable."' Put differently, [he] must show that every reasonable jurist would conclude that it is reasonable likely that [a petitioner] would have fared better at trial had his counsel conducted [himself differently]. 'It bears repeating,' the Supreme Court emphasized in *Richter*, 'that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.'" (footnotes omitted)).

unreasonable.

### (ii)    *Failure to Object to Court Instructions*

For his third IAC ground for relief, Backusy states that his counsel was ineffective for failing to "object to instructions to jury, easing the burden of proof beyond a reasonable doubt." Dkt. 3 at 6. Although he gives no details in the actual habeas petition, Backusy appears to be referencing the following jury instruction that the state trial court used: "It is not required that the prosecution prove guilt beyond all possible doubt; it is only required that the prosecution's proof excludes all reasonable doubt concerning the defendant's guilt." Courts have held that this jury instruction does not violate the Constitution, as it does not lessen the State's burden of proof; thus, there was no reason for Backusy's counsel to object to it. *See Pryor v. Quarterman*, Civil Action No. 3:05-cv-2102-G, 2006 WL 363467, at *4 (N.D. Tex. Dec. 13, 2006) (finding that identical language did not violate constitution); *Horton v. Director*, *TDJC-CID*, Civil Action No. 4:08-cv-380, 2011 WL 5433998, at *12 (E.D. Tex. Oct. 11, 2011) (same).

Next, in his reply brief, Backusy also takes issue with his counsel's failure to object to an instruction stating that "the State does not have to prove extraneous offenses or bad acts beyond all possible doubt." But, even if the Court were to construe this argument as a motion to amend, it should be denied as futile because there is nothing unconstitutional about this instruction. *See*

*United States v. Trevino*, 554 F. App'x 289, 293 (5th Cir. 2014) (requiring new issue raised by *pro se* litigant in reply to responsive pleading to be construed as a motion to amend); *see also Martinez v. Dretke*, 426 F.Supp.2d 403, 537 (W.D. Tex. 2006) ("[T]he Constitution neither prohibits the admission of evidence at the punishment-phase of a capital trial showing the defendant engaged in extraneous, unadjudicated, criminal conduct nor requires unadjudicated, extraneous offenses be proven beyond a reasonable doubt before evidence of same may be admitted during the punishment-phase of a capital trial."; citing *Brown v. Detke*, 419 F.3d 365, 376 (5th Cir. 2005), *cert denied*, 546 U.S. 1217 (2006) (No. 05-8258); *Hughes v. Dretke*, 412 F.3d at 592-93; *Gutierrez v. Dretke*, 392 F.Supp.2d 802, 870-72 (W.D. Tex. 2005)).

Backusy also vaguely suggests, without explanation, that his counsel failed to object to the trial court's lack of jurisdiction. As explained below, such an objection would have been futile, and *Strickland* does not require counsel to make futile objections. *See Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990).

Backusy's third ground for IAC relief should be denied.

### (iii)    *Failure to Call an Expert Witness*

In his fourth IAC ground for relief, Backusy argues that his counsel was ineffective for not calling an expert witness.

> [C]omplaints of uncalled witnesses are not favored on habeas review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified to are largely speculative. *See Boyd v. Estelle*, 661 F.2d 388, 390 (5th Cir. 1981); *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978). To prevail on such a

> claim, a petitioner must show that the witness's testimony would
> have been favorable and that the witness would have testified.
> *See Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985). And
> where the only evidence of missing witnesses' testimony is from
> the defendant, the court views claims of ineffective assistance
> with great caution. *Lockhart v. McCotter*, 782 F.2d 1275, 1282
> (5th Cir. 1986).

*Dennis v. Quarterman*, No. 4:07-cv-20-Y, 2008 WL 1808546, at *4 (N.D. Tex. Apr. 21, 2008).

The state court's denial of this conclusory claim was not an unreasonable application of *Strickland*. Backusy fails to identify what testimony that this unidentified witness would have provided. Nor has he shown that the expert witness would have testified.

Backusy's fourth IAC ground for relief should be denied.

## C.  Lack of Jurisdiction

Backusy raises the issue of "[w]hether the grand jury can vest two courts to hear the case on one face of the indictment," namely one court in which he was indicted and another court in which he was convicted." Dkt. 3 at 7. The State contends that this ground for relief turns on a question of state law, thus precluding federal habeas relief. The undersigned agrees.

A federal court may not review a state court's determination of state law issues. *Thompson v. Thaler*, 432 F. App'x 376, 379 (5th Cir. 2011); *McCarthy v. Thaler*, 482 F.App'x 898, 903 (5th Cir. 2012). "Under § 2254, federal habeas courts sit to review state court misapplications of federal law. A federal court lacks authority to rule that a state court incorrectly interpreted its own law."

*Charles v. Thaler*, 629 F.3d 494, 500-01 (5th Cir. 2011) (emphasis original). "It is not our function as a federal appellate court in a habeas proceeding to review a state's interpretation of its own law, and we defer to the state courts interpretation of the Texas…statute." *Schaetzle v. Cockrell*, 343 F.3d 440, 449 (5th Cir. 2003) (quoting *Weeks v. Scott*, 55 F.3d 1059, 1063 (5th Cir. 1995)).

Here, in rejecting this argument, the state habeas court implicitly applied Texas law to determine that Backusy's argument lacked merit. And, as Texas state courts have recognized, "[i]n multi-court counties, such as Harris County, a specific district court may impanel a grand jury, but it does not necessarily follow that all cases considered by that court's grand jury are assigned to that court." *Allen v. State*, 570 S.W.3d 795, 800 (Tex. App. – Hou. [1st Dist.] 2018) (citations omitted). "In other words, one court may impanel a grand jury, and if an indictment is presented, the case may be filed in another court of competent jurisdiction within the same county." *Id.* (citations omitted).

To escape this result, Backusy argues, for the first time in his reply brief, that the rendering of the indictment in a court different from that where he was tried violates the Fifth Amendment to the United States Constitution's command that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grandy jury." U.S. CONST. amend V. He also argues – again for the first time in his reply brief – that his right to reasonable notice of the charge against him and an

opportunity to be heard in his defense were violated because the trial took place in a court different from the one that indicted him.

But Backusy failed to raise these claims before the TCCA. They are unexhausted and, under the Texas abuse-of-the-writ doctrine, could not be raised through a subsequent habeas petition. *See Barrientes*, 221 F.3d at 759 n.10. And, because Backusy fails to show cause for his failure to raise these claims below and actual prejudice as a result of the alleged violation of federal law, and because he does not demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice, any amendment to add these claims would be futile and should be rejected. *See Coleman*, 501 U.S. at 750.

Backusy's ground for relief premised on the lack of jurisdiction of the state trial court is meritless.

### D.    Confrontation Clause Claim

Backusy alleges that his right to confrontation was violated. But, as the State points out, Backusy does not actually allege that he was prevented from confronting any uncalled witnesses. Rather, "he appears to disagree with the trial court's designation of an outcry witness – a trial record-based claim that is predicated upon a violation of state law, and not Backusy's constitutional right under the Confrontation Clause." Dkt. No. 16 at 24.

"Under the Sixth Amendment, a criminal defendant has the right 'to be confronted with the witnesses against him.'" *Taylor v. Cain*, 545 F.3d 327, 335

(5th Cir. 2008) (quoting *Coy v. Iowa*, 487 U.S. 1012, 1015 (1988)). "The Confrontation Clause generally bars witnesses from reporting the out-of-court statements of nontestifying declarants." *Id.* (citing *Crawford v. Washington*, 541 U.S. 36, 54-56)). But a person is generally not considered a witness "against" a defendant for purposes of the Confrontation Clause unless the person's "testimony is part of the body of evidence that a [factfinder] may consider in assessing his guilt." *Cruz v. New York*, 481 U.S. 186, 190 (1987); *accord United States v. Stalnaker*, 571 F.3d 428, 434 (5th Cir. 2009).

Here, Backusy does not identify any out-of-court statements by nontestifying declarants, or even claim that he was prevented from confronting any uncalled witness. He has failed to show that the state court's rejection of this claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

And, to the extent that Backusy argues that his Confrontation Clause rights were violated by the State's alleged failure to disclose witnesses to be "evaluated" before trial, the undersigned agrees with the State that Backusy failed to exhaust this claim before the TCCA. *See* Dkt. 18-20 at 24-25; Dkt. 18-23 at 52-55. Because he fails to show cause for his failure to raise this claim and actual prejudice as a result of the alleged violation of federal law, and

25

because he does not demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice, this claim is procedurally barred. *See Coleman*, 501 U.S. at 750.

### E.    Right to a Speedy Trial

Backusy also claims that his right to a speedy trial was violated, necessitating habeas relief. "The Sixth Amendment guarantees a defendant 'the right to a speedy and public trial.'" *Leachman v. Stephens*, 581 F. App'x 390, 402 (5th Cir. 2014) (quoting U.S. CONST. amend. VI). This right "applies to the states via incorporation by the Due Process Clause of the Fourteenth Amendment." *Id.* (citing *Divers v. Cain*, 698 F.3d 211, 215 (5th Cir. 2012)). And whether this right has been violated is "a mixed question of law and fact," which in the current context – federal habeas review of the state court's rejection of a speedy-trial claim – triggers "the deferential standard of 28 U.S.C. § 2254(d)(1)." *Amos v. Thornton*, 646 F.3d 199, 204 (5th Cir. 2011) (per curiam) (footnotes omitted). "Accordingly, [a state prisoner] is entitled to relief only if the state court's rejection of his speedy-trial claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as articulated by the decisions of the Supreme Court." *Id.* (footnote omitted).

> "Very few petitioners" can make the requisite showing, and due to the somewhat indeterminate and fact-intensive nature of the speedy trial right, [a federal court's] "always-substantial deference is at an apex." In resolving speedy trial issues, [the Court should] consider: "(1) the length of delay, (2) the reason for the delay, (3) the defendant's assertion of his right to speedy trial,

and (4) prejudice to the defendant." The factors are guides that
require a delicate balancing.

*Divers*, 698 F.3d at 217 (quoting *Amos*, 646 F.3d at 204-05 (citation omitted);

*see also Speer v. Lumpkin*, 824 F.App'x 240, 244 (5th Cir. 2020) ("Because [the

speedy trial] right is 'amorphous,' 'imprecis[e],' 'necessarily relative,' and

'slippery,' the Supreme Court established 'a balancing test, in which the

conduct of both the prosecution and the defendant are weighed.' Relevant

factors include the length of the delay, the reason for it, the defendant's

diligence in asserting the right, and whether the delay prejudices the

defendant." (quoting *Barker v. Wingo*, 407 U.S. 514, 522 529-30 (1972), then

citing *Vermont v. Brillon*, 556 U.S. 81, 90 (2009))).

The minimum delay necessary to trigger a *Barker* analysis is one year.

And "[i]f this threshold showing is made, the court must examine the extent to

which the delay extends beyond the bare minimum required to trigger a *Barker*

analysis, because 'the presumption that pretrial delay has prejudiced the

accused intensifies over time.'" *Goodrum v. Quarterman*, 547 F.3d 249, 257

(5th Cir. 2008) (quoting *Doggett v. United States*, 505 U.S. 647, 652 (1992)).

Backusy was arrested no earlier than April 28, 2016 and released on

April 29, 2016. Doc. 18-2 at 16-120. He was indicted on June 18, 2016, and trial

began on October 31, 2017. *Id.* at 14. Thus, a delay of nearly 1.5 years from

initial arrest to trial occurred, triggering the remainder of the *Barker* analysis.

The State concedes that the first factor – the length of the delay – may

be viewed in Backusy's favor. But the State argues, and the undersigned

agrees, that the remainder of the analysis cuts against Backusy. Backusy waited 19 months until after he was first arrested to assert a speedy trial violation; thus, this factor weighs in favor of the State. *See, e.g, Divers*, 698 F.3d at 219 (17-month delay weighed against the defendant); *Robinson v. Whitley*, 2 F.3d 562, 569 (5th Cir. 1993) (12 months). As for prejudice, the heart of the inquiry is whether the delay impaired the defendant's defense. *See Speer*, 824 F.App'x at 246. But Backusy has not explained how his defense was impaired by the delay, and the *Doggett* presumption of prejudice only applies when the delay attributable to the government negligence is at least five years or the three initial *Barker* factors weigh heavily in favor of the defendant. Because that is not the case here, the undersigned finds that Backusy has failed to demonstrate prejudice from the delay.

In all, with some factors of the *Barker* analysis favoring the State, and viewed through the deferential lens of Section 2254(d)(1), the state court's rejection of this ground for relief did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as articulated by the decisions of the Supreme Court.

### F.    Actual Innocence

Backusy raises his actual innocence as a ground for relief. *See* Dkt. 3 at 12. Backusy presents no cogent argument on this ground for relief. But, even if he did, actual innocence is not cognizable as a freestanding federal habeas claim. *See Reed v. Stephens*, 739 F.3d 753, 766-68 (5th Cir. 2014) (precluding

freestanding innocence claim); *Foster v. Quarterman*, 466 F.3d 359, 367-68 (5th Cir. 2006) ("[A]ctual-innocence is not an independently cognizable federal-habeas claim."). Thus, this claim also fails.

### G.     "Breach of Fundamental Rights"

Backusy claims that he is entitled to habeas relief because the trial court "breached [his] fundamental rights" when it: (1) instructed that the verdict must be unanimous and arrived at by due deliberation; (2) instructed that the prosecution does not have to prove the commission of extraneous offenses beyond all possible doubt; and (3) informed the jury that Backusy had elected not to testify, which was his "privilege." Dkt. 3 at 12. This claim should be denied. As discussed above, there is nothing unconstitutional about instructing the jury that the commission of extraneous offenses need not be proven beyond all possible doubt. And Backusy fails to explain how instructing the jury to vote deliberately – or that he had elected not to testify, as was his privilege – could possibly violate the Constitution.

### H.     Conviction through "False Documents"

Backusy also claims that he was illegally held in custody by "manipulated bail out documents," which caused him to be "convicted under different numbers on the same charge: double jeopardy." Dkt. 3 at 14.

To the extent that Backusy is attempting to argue that his conviction violated the Double Jeopardy Clause, the provision protects against multiple prosecutions and punishments for the same offense. *See Monge v. California*,

524 U.S. 721, 727 (1988). More specifically, "the double jeopardy clause serves three interests, protecting against: (1) prosecution of the same offense after acquittal; (2) prosecution of the same offense after conviction; and (3) multiple punishments for the same offense." *United States v. Berry*, 977 F.2d 915, 918 (5th Cir. 1992). None of those interests are at play here. Backusy has not been prosecuted for the same offense after conviction or acquittal. Nor has he been punished twice for the same offense. This claim is without merit.

## Recommendation

The Court should deny Backusy's application for a writ of habeas corpus.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or

adopted by the district court, except upon grounds of plain error. *See Douglass*

*v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

SO ORDERED.

DATED: March 25, 2021

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE